[Civ. No. 18020.   First Dist., Div. One.   Mar. 26, 1959.]

BOGDANICH CONSTRUCTION COMPANY (a Corporation), Plaintiff, v. LEONARD SEMAS, Respondent; BOGDANICH BUILDING COMPANY (a Corporation), Appellant.

LEONARD SEMAS, Respondent, v. BOGDANICH BUILDING COMPANY (a Corporation), Appellant.

Rankin, Oneal, Luckhardt & Center and Maurice J. Rankin for Appellant.

Machado, Feeley & Machado and John H. Machado for Respondent.

HANSON, J. pro tem.*—The controlling question in this case, as we view it, is whether the trial court correctly interpreted the meaning of the language italicized in paragraph 6 of the contract (set forth below) entered into by and between Semas on the one side and Bogdanich Construction Company and Bogdanich Building Company on the other.

The trial court found that Semas, through weekly advances, had been overpaid the sum of $13,338.70 in excess of his one-third share of the net profits of Construction Company, but, by reason of the language italicized in paragraph 6, he was required to repay only one-fifth thereof. The paragraph reads as follows: ''6. Construction shall pay to Semas $250 at the end of each week of his employment, such payments to be on account of the compensation herein provided, and in the event such compensation shall be less than such weekly payments, reimbursement of the deficiency shall be required to be returned to Construction by Semas, *and officers of Construction drawing salaries, to reimburse in equal amounts.* All money paid by Construction to Semas as salary from November 2, 1953, to date, shall be applied to the credit of Construction under the terms hereof.''

The material facts necessary to a decision on this point may now be stated. Bogdanich Building Company, a corporation, and Bogdanich Construction Company, a corporation, were two family corporations. Paul Bogdanich was president of and controlled both corporations. The family associates were officers of both. The Bogdanich Construction Company, a corporation, hereinafter referred to as Construction Company, or Construction, and the Bogdanich Building Company, a corporation, hereinafter referred to as Building Company or Building, were both engaged in commercial and residential construction, although Building Company was principally engaged in residential construction and Construction Company in commercial construction. Under the terms of a written contract of date June 23, 1952, Semas, respondent herein, was employed as a construction superintendent for

*Assigned by Chairman of Judicial Council.

Building Company. Under this agreement which, by its terms, was to run for a period of two years, it was agreed that a salary of $250 per week would be paid to Semas and in addition he was to receive 13 per cent of the net profit of Building less the advance salary which had been paid to him. Until November 2, 1953, Semas continued to be employed by Building as superintendent of residential construction which employment, however, terminated as of November 2, 1953, when, through mutual agreement of the parties, he transferred to Construction as superintendent of commercial construction for that corporation. After the termination of Semas' employment as superintendent of Building, that company in payment of the percentages due gave him its promissory note dated January 2, 1954, for $17,000, payable 10 years after date or upon the sooner termination of his employment by Construction Company. While Semas' transfer from Building Company to Construction Company was agreed to take effect as of November 2, 1953, and seems actually to have taken effect on that date, the written agreement containing the terms agreed upon by the parties was not signed until June 30, 1954. It is not clear whether the note mentioned above was delivered prior to June 30, 1954, or not. The June 30, 1954, contract which was signed by Semas and the two corporations, expressly provided that the Semas-Building contract of June 23, 1952, should terminate as of November 2, 1953, and, likewise, that the written agreement between the parties for the employment of Semas by Construction Company was to run from and as of the date of November 2, 1953.

The written contract between Semas on the one hand and Building Company and Construction Company on the other expressly provides that Semas is employed as general superintendent of commercial construction at a compensation of 33⅓ per cent of the *"net profits"* from the operation of the *"business"* of Construction Company to be ascertained at the end of each fiscal year (March 1).

The contract also provides that either Semas or Construction Company could terminate the contract upon 90 days notice. Such a notice was served upon Semas by Construction Company on September 27, 1954.

The trial judge recognized, and he so stated in his memorandum opinion, in construing the language emphasized above in paragraph 6, that, ''It seems to be inescapable, if somewhat fantastic, that Semas is required to repay only a portion

of his weekly salary.'' He nevertheless felt that the language used in paragraph 6 did not warrant any other conclusion than to hold Semas liable to repay only a certain fraction of the overpayment which he found had been made to him. And upon that construction of the contract he determined that Semas had been overpaid through the weekly advancements of $250 the sum of $13,338.70 for the two fiscal periods; but, as stated, he was required to repay to Construction Company only a fraction thereof, the rest being repayable by the four officers of Construction Company who had received salaries from that corporation.

Building construes paragraph 6 to require that, in case of loss suffered by Construction in any one fiscal year, all ''advances'' paid to Semas were to be returned by him [to the extent of the deficiency]. Semas, on the other hand, contends that he was to return only a pro rata share enough to make up any *deficiency* up to the amount he received along with the officers of the corporation who drew salaries. That is, if four drew salaries Semas was to make up only one-fifth of the deficiency and each officer was to make up one-fifth; that if three drew salaries in any one fiscal year, then Semas was to make up one-fourth only and each officer was to make up one-fourth, and the court, as stated, so found. On this basis of computation, the court found that he had been paid for the two fiscal years $13,338.70 more than his one-third share of the profits and required him to repay $3,122.17 for the two fiscal years (his one-fifth share for the first fiscal year and his one-fourth share for the second fiscal year—there being four officers drawing salaries in the first fiscal year and three in the second). The court awarded judgment to Semas for the difference between $3,122.17 and the amount due on Building's $17,000 note or $13,877.83 from which judgment this appeal has been taken.

Turning now to the terms of the contract, we find that for the purpose of determining the 33⅓ per cent of the net profits to which Semas was entitled, the contract expressly provides that none of the salaries paid to the officers of Construction during the first fiscal year (which had only four months to run) should be deducted in computing the net profits other than such salary as was paid to Anthony Bogdanich and in his case not to exceed the rate of $100 per week. Moreover, the advancements made to Semas were not to be deducted. With respect to the second fiscal year and each fiscal year thereafter the contract sets forth like provisions except that the

salary payment to Anthony could be increased but not to exceed $250 per week. Another provision with respect to salaries is not here involved. Salaries actually paid to officers other than Anthony were not to be deducted and were not deducted in arriving at the net income. During the first fiscal year there were three such officers whose salaries were not deducted, that is to say, Paul, Jacobina, and Gregory Vistica. During the second fiscal year, there were only two officers who were paid salaries other than Anthony. It is of interest at this point to note that Jacobina, who was employed as a salaried officer during the first fiscal year, received for the four-month period November 1 to March 1 a salary totaling $433 but, by virtue of the construction given to paragraph 6 by the trial judge, she is required to repay the sum of $850, more than twice the amount of salary she received. That nothing of this character was contemplated by the parties would seem clear for such arrangement would be preposterous. In truth, the contract as interpreted would require the repayment by every officer who had received only $1.00 per fiscal year at the end of the two fiscal periods the sum of $3,122.17.

During the second fiscal year (it ran for 10 months when all connection between Construction and Semas was severed) the three officers who received salaries in that year received approximately $12,433 for the 10 months, but of this amount Anthony received $5,500 (and Semas the sum of $10,750 as advancements) while Paul and Gregory together received $6,933 or $3,466 each. Yet, these latter sums were not deducted from the net profits. It follows that while Semas received advancements in the two periods aggregating $15,000 he is charged with only one-fifth thereof, or $3,000, or 20 per cent, while Gregory and Paul are each required to pay more than 50 per cent of what they had received by way of salary. The illustrations above show the absurdity of construing the contract in the manner that respondent would have us do.

Appellant contends: (1) "... that the provisions of paragraph 6 of the contract were for the purpose of requiring Semas to refund such moneys as he was advanced in excess of the share of the profits to which he was entitled. Otherwise the loss to the company would be increased by the amounts advanced to Semas and not repaid by him, to wit, $14,750.00"; and (2) "The provisions of paragraph 6 requiring reimbursement to the company obviously meant that such officer or officers as were paid salaries that affected the profit

or loss of the venture, and there was only one, Anthony Bogdanich, should refund to the corporation such salary as he had received, and it was solely to the corporation that he owed this duty, and it would be unreasonable to so construe this provision as to require the one officer, Anthony Bogdanich, to repay to the corporation moneys which had been advanced to Semas. We respectfully submit that the trial Judge's application of this paragraph of the contract is contrary to its intent and purpose and untenable.''

Respondent argues that the paragraph could not refer only to the salary paid to Anthony Bogdanich because of the use of the plural, to wit, ''Officers of Construction'' and ''drawing salaries.''

We think that a probable interpretation of this provision is that it meant, if there should have been profits from the enterprise but amounting to less than Semas' 33⅓ per cent share, that Semas should have to repay all over that amount which he received, and the other officers (whose salaries like Semas' were not deducted from profits in determining net profits) would have to return the same *percentage* of their salaries which Semas would have to return out of his advancements. That is, if Semas were required by the terms of the contract to return 50 per cent of what he has received, then the other officers would have to return an ''equal amount,'' to wit, 50 per cent of what they had received. This would account for the use of both the words ''equal amount'' and the plural and at the same time appear to be in accordance with the intent of the parties which was that Semas was to get one-third of the net profits.

The solution of the ambiguity created by the language used in paragraph 6 of the contract was not aided by any of the testimony of the parties and we think it is clear that the trial court was of the same opinion.

The comma after the name Semas in paragraph 6 is unquestionably intended to separate what Semas was to do in respect to his overpayment and what the officers were to do with respect to their salaries, i.e., to refund proportionately out of their salaries when such salaries had been deducted in computing net income. But, be that as it may, it cannot be said that the officers were to assume or pay any part of the overpayment which had been received by Semas.

Furthermore, we think that the use of the comma and the conjunction ''and'' prevents ''Semas and officers of Construction'' from being a double object of the preposition

"by" immediately preceding the word "Semas"; that in fact the words do constitute an independent clause with the auxiliary verb "are" being understood before the infinitive "to reimburse." If it is an independent clause, there is no reason at all why it should have to be read as modifying the clause preceding it beginning with the word "reimbursement." If it were so construed, such construction would tend to support appellant's interpretation.

Another contention made by the respondent deserves a word or two. He cites *Pacific Lbr. Co.* v. *Industrial Acc. Com.* (1943), 22 Cal.2d 410, 422 [139 P.2d 892]; *Estate of Rule* (1944), 25 Cal.2d 1, 13 [152 P.2d 1003, 155 A.L.R. 1319], and *Taylor* v. *J. B. Hill Co.* (1948), 31 Cal.2d 373, 374 [189 P.2d 258], for the well known proposition that in case of uncertainty in a contract it is to be construed most strongly against the party who caused the uncertainty to exist —the party drafting the instrument.

In this case the contract was drawn by Gregory Vistica, an officer of Construction, and consequently uncertainties should be construed in favor of respondent, provided the construction rendered is not absurd. (See 12 Cal.Jur.2d 330.) But here, as we think we have sufficiently shown, the construction contended for by respondent is absurd and cannot be sustained.

Judgment reversed.

Peters, P. J., and Bray, J., concurred.